**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TERRI DEVON COATES,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-0752-16-0369-C-1 |
| 　　　v. | |
| UNITED STATES POSTAL SERVICE,<br>　　　　　Agency. | DATE: August 28, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Christopher H. Bonk</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Jasmin A. Dabney</u>, Landover, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**ORDER**

¶1　　　The agency has filed a petition for review of the compliance initial decision that granted the appellant's petition for enforcement and ordered the agency to pay the appellant $10,187.88 in accordance with a settlement agreement between the parties. For the reasons discussed below, we DENY the agency's petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review. We AFFIRM the compliance initial decision, except as expressly MODIFIED to address the invalidity of the addendum to the settlement agreement and the material nature of the agency's breach. We ORDER the agency to file evidence of compliance within 45 days.

## BACKGROUND

¶2      On February 21, 2016, the appellant filed an appeal with the Board alleging that the agency constructively suspended her and failed to restore her to duty after recovering from a compensable injury. *Coates v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0369-I-1, Initial Appeal File (IAF), Tab 1. In February 2017, the parties entered into a settlement agreement. IAF, Tab 25 at 4-9. The administrative judge issued an initial decision on February 23, 2017, dismissing the appeal as settled and entering the agreement into the Board's record for enforcement purposes. IAF, Tab 27, Initial Decision (ID).

¶3      Relevant portions of the settlement agreement state, in part:

a. Following receipt by the Agency of a fully executed copy of this Agreement, the Agency shall pay to Appellant the total gross amount of Sixty Five Thousand Dollars ($65,000) in compensation for any and all claims of damages. The Parties have agreed that payment of said total amount shall be accomplished by and through the following two (2) processes:

1. Payment of Back Pay: The Agency agrees that Appellant shall be paid back pay for all times Appellant was placed in Leave Without Pay "LWOP" status and not paid her regular work salary during the time period of December 1, 2015, through July 31, 2016. Said amount shall be paid to Appellant by and through pay adjustments and will, accordingly, be subject to all usual and customary income tax and other withholdings and reported to the Internal Revenue Service on Form W-2. Any payment calculations shall include the reinstatement of any applicable leave Appellant would have otherwise accrued or been entitled to during the time period provided above;

2. Balance Payment: Following its above computation and payment of back pay to Appellant, the Agency shall make a single, lump sum payment of the gross balance (if any) between Sixty Five Thousand Dollars ($65,000) minus (-) the total gross amount of back pay computed as owed to Appellant. Said lump sum shall be paid by check to Appellant[.]

IAF, Tab 25 at 4-5.

¶4    On September 26, 2017, in accordance with the settlement agreement, the agency paid the appellant $40,302.13 in back pay. *Coates v. U.S. Postal Service*, MSPB Docket No. DC-0752-16-0369-C-1, Compliance File (CF), Tab 1 at 19-24. That left $24,697.87 to be paid by the agency to the appellant in a lump sum. The agency subjected this lump sum payment to $10,187.88 in withholdings, which included: $6,174.47 in Federal taxes; $2,124.02 in state taxes; $1,531.27 in Social Security; and $358.12 in Medicare. *Id*. at 28-29. As a result, for the lump sum payment portion of the settlement agreement, the agency paid the appellant $14,509.99 on September 27, 2017. *Id*. at 25, 28.

¶5    On October 4, 2017, the appellant, through her representative, advised the agency that it did not fulfill its obligations under the agreement, as the lump sum payment had taxes and other withholdings deducted before payment was made. *Id*. at 29-30. The appellant sought $10,187.88 from the agency, which was the total of the withholdings taken from the lump sum payment. *Id*. at 29. In response, the agency conceded that it processed the lump sum payment as "semi back pay" and informed the appellant that it would prepare an addendum to the settlement agreement to process the remaining payment. *Id*. at 29. The agency sent the appellant an unsigned addendum to the settlement agreement on October 24, 2017. CF, Tab 1 at 31-32; Petition for Review (PFR) File, Tab 2 at 21. The appellant and her representative signed the addendum and returned it to the agency for signature on November 10, 2017. CF, Tab 1 at 31-32; PFR File, Tab 2 at 21. A copy of the addendum signed by both parties was never entered into the Board's record.

¶6        On December 1, 2017, the agency advised the appellant that it would not process any additional payment and provided her with instructions on how to seek Federal and state tax exemptions for the amount of taxes withheld from the lump sum payment.  CF, Tab 1 at 33-34.  Because of this, on December 29, 2017, the appellant advised the agency that it was in breach of the settlement agreement.  *Id.* at 36-37.  The agency responded on the same day and claimed that it complied with the agreement.  *Id.* at 35-36.

¶7        The appellant filed a petition for enforcement with the Board on February 28, 2018, alleging that the agency breached the agreement because it subjected the lump sum payment to $10,187.88 in taxes and other withholdings.[2]  CF, Tab 1.    After the parties filed written pleadings on the matter, the administrative judge issued a compliance initial decision, granting the appellant's petition for enforcement and ordering the agency to pay the appellant (care of her representative) $10,187.88.  CF, Tabs 3-4, 5, Compliance Initial Decision (CID).  The agency's petition for review and the appellant's response in opposition followed.  PFR File, Tabs 1-2, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

### The addendum to the settlement agreement is invalid, as it was not executed in accordance with the terms of the agreement regarding modifications.

¶8        A settlement agreement is a contract, meaning the Board will adjudicate a petition to enforce a settlement agreement in accordance with contract law.  *Walker-King v. Department of Veterans Affairs*, 119 M.S.P.R. 414, ¶ 9 (2013).  The clear terms of a settlement agreement are controlling.  *Aylward v. U.S. Postal Service*, 85 M.S.P.R. 40, ¶ 5 (1999).  In this case, the settlement agreement states

---

[2] Per the terms of the settlement agreement, the appellant could not initiate an enforcement action until 30 days after she contacted the agency's Deputy Managing Counsel, which occurred on December 29, 2017.  IAF, Tab 25 at 7; CF, Tab 1 at 35-37.  The appellant also needed to provide the agency with a reasonable time to cure any perceived defect.  IAF, Tab 25 at 7.

that any agreements made after its execution "are not binding unless in writing and signed by both the Appellant and the Agency." IAF, Tab 25 at 8. The agreement further states that it may be amended "only by express written agreement signed by the Parties." *Id*.

¶9      The record shows that the parties contemplated executing an addendum to the settlement agreement to outline the parameters of the agency paying the appellant the portion of the lump sum payment that was withheld. CF, Tab 1 at 29; PFR File, Tab 2 at 21. The appellant and her representative signed an addendum prepared by the agency. CF, Tab 1 at 31-32. The agency's position on whether the addendum is valid is conflicting; as it stated that the parties entered into the addendum and later argued that it never signed the addendum, meaning there was no modification of the original agreement. CF, Tab 3 at 7; PFR File, Tab 1 at 7. Due to this uncertainty and the lack of a copy of the fully executed addendum to the settlement agreement in the record, the Board ordered the parties to submit a copy. PFR File, Tab 5. Both parties responded and affirmed under the penalty of perjury that neither possesses a fully executed copy of the addendum to the settlement agreement. PFR File, Tab 6 at 4, Tab 7 at 4-5. Under these circumstances, there is insufficient evidence in the record to conclude that the parties modified the settlement agreement in accordance with its terms. As such, the addendum referenced in this case is not enforceable

¶10     In the compliance initial decision, the administrative judge stated that the parties entered into an addendum to the settlement agreement. CID at 3-4. However, the administrative judge found the agency in breach because it failed to fulfill the express terms of the original agreement and not due to any noncompliance with the addendum. CID at 3-5. Therefore, any error by the administrative judge in referring to the addendum was not prejudicial to a party's substantive rights and is therefore not a basis to overturn the compliance initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282

(1984) (outlining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no reason for reversal of an initial decision).

<u>The appellant proved that the agency materially breached the settlement agreement and that the Board should order enforcement of the agreement.</u>

¶11 As the party seeking enforcement, the appellant bears the ultimate burden of proving that the agency failed to comply with the settlement agreement by preponderant evidence. *Pokrivnak v. U.S. Postal Service*, 93 M.S.P.R. 134, ¶ 9 (2002). The agency must still produce relevant, material, and credible evidence of its compliance with an agreement upon the filing of a petition for enforcement. *Vaughn v. U.S. Postal Service*, 97 M.S.P.R. 97, ¶ 7 (2004); *Pokrivnak*, 93 M.S.P.R. 134, ¶ 9.

¶12 As found by the administrative judge in the compliance initial decision, the appellant met her burden of proving that the agency did not comply with the settlement agreement. CID at 3-5. The express terms of the settlement agreement are clear—the agency agreed to pay the appellant a specific amount of back pay pursuant to a calculation set forth in the provision entitled "Payment of Back Pay." IAF, Tab 25 at 4-5. The agency then agreed in a provision entitled "Balance Payment" that the gross balance of $65,000 minus the gross back pay amount would be paid to the appellant in a lump sum. *Id*. at 5. Unlike the back pay provision, the "Balance Payment" provision for the lump sum payment included no language regarding withholdings of any kind. *Id*. at 4-5.

¶13 The agency paid the appellant $40,302.13 in gross back pay, meaning the gross balance between $65,000 and the gross back pay amount was $24.697.87. CF, Tab 1 at 19, 25, 28. Instead of paying the appellant $24,697.87 in a lump sum payment as outlined in the settlement agreement, the agency unilaterally determined to treat this payment as "semi back pay" and deducted taxes and other

withholdings from it in the amount of $10,187.88.[3]  *Id*. at 28-29.  The payment remitted by the agency to the appellant to satisfy the "Balance Payment" provision of the settlement agreement totaled $14,509.99 and not $24.697.87.  *Id*.  Thus, the agency breached the settlement agreement.

¶14    Because the agency breached the agreement, a determination must be made as to whether it was material.  *Herring v. Department of the Navy*, 90 M.S.P.R. 165, ¶ 11 (2001).  Whether there has been a material breach depends on the extent to which the injured party is deprived of a benefit reasonably expected from the agreement.  *Leeds v. U.S. Postal Service*, 108 M.S.P.R. 113, ¶ 4 (2008).  A breach is material when it relates to a matter of vital importance or goes to the essence of the agreement.  *Galloway v. Department of Agriculture*, 110 M.S.P.R. 311, ¶ 7 (2008); *Herring*, 90 M.S.P.R. 165, ¶ 11.

¶15    Here, the lump sum payment was unquestionably one of the primary benefits of the agreement for the appellant.  The appellant anticipated receiving a lump sum payment from the agency, without any withholdings, in the amount of the gross balance of $65,000 minus the gross back pay amount.  It was reasonable for the appellant to expect to receive this payment and use it as she saw fit.  The agency's noncompliant action of subjecting the lump sum payment to withholdings deprived the appellant of this ability.  This also seemingly caused

---

[3] The agency does not define what it means by "semi back pay."  Under the Back Pay Act, when an agency agrees to compensate an employee for back pay, it is to pay the amount of pay, allowances, or differentials that she would have earned or received during the applicable period if the personnel action had not occurred.  5 U.S.C. § 5596(b)(1)(A)(i).  In a back pay payment, an agency is required to deduct appropriate amounts for retirement, Medicare, Federal and state taxes, and any payment the employee received for accrued annual leave.  *Hargett v. Department of the Navy*, 82 M.S.P.R. 180, ¶ 6 (1999).  The lump sum payment provision in this case does not define what personnel action it is rendering payment for, nor did the agency make all the appropriate contributions and deductions as if the payment was actually back pay as it alleges.  IAF, Tab 25 at 4-5; CF, Tab 1 at 28.  Instead, the agency only made deductions for Federal and state taxes, Social Security, and Medicare.  CF, Tab 1 at 28.

tax concerns and other complications for the appellant.  CF, Tab 4 at 4; PFR File, Tab 4 at 9.  Clearly, the agency materially breached the agreement.

¶16    Because there is a material breach, the nonbreaching party, which is the appellant in this case, may elect between recession of the agreement and reinstatement of her appeal, or alternatively, enforcement of the agreement. *Wonderly v. Department of the Navy*, 68 M.S.P.R. 529, 532 (1995).  In this matter, the appellant seeks enforcement of the agreement and payment in the amount of $10,187.88, the sum wrongly withheld from the lump sum payment. CF, Tab 1 at 8.

The agency raises no basis to grant its petition for review.

¶17    In its petition for review, the agency argues that the settlement agreement is devoid of any provision wherein it agreed that the lump sum payment to the appellant would not be subject to withholdings.  PFR File, Tab 1 at 10.  In construing the terms of a settlement agreement, the words of the agreement are of paramount importance in determining the intent of the parties at the time they contracted.  *Boutin v. U.S. Postal Service*, 70 M.S.P.R. 376, 378 (1996).

¶18    Upon review, we find this argument proffered by the agency unpersuasive. In the settlement agreement, the agency agreed to pay the appellant a "single, lump sum payment of the gross balance (if any) between Sixty Five Thousand Dollars ($65,000) minus (-) the total gross amount of back pay . . . ."  IAF, Tab 25 at 5.  The term "gross" means "undiminished by deduction; entire." *Black's Law Dictionary* (10th ed. 2014).  Further, had the parties intended for the entire payment in the settlement agreement to be treated as back pay and thus subject to deductions and withholdings, there would have been no reason for two distinct payment provisions; rather, the parties would have agreed to a payment of $65,000 in back pay.  The "Payment of Back Pay" provision of the agreement specifically outlined that the agency was to provide the appellant with back pay for a defined period that the appellant was carried in a LWOP status, and included

language that the back pay payment was "subject to all usual and customary income tax and other withholdings . . . ." IAF, Tab 25 at 4-5. The "Balance Payment" provision of the agreement for the lump sum payment included no language regarding withholdings. *Id.* at 5. Lump sum payments not subject to withholdings are commonplace in settlement agreements before the Board.

¶19    The agency also asserts that paying the appellant the amount of withholdings would cause it to pay more than the amount agreed upon in the settlement agreement. PFR, Tab 1 at 12. However, the agency cannot unilaterally decide how to make the payment to the appellant, in violation of the settlement agreement, and then successfully argue that its obligations are met. The agency remains free to work with the taxation authorities to which it sent the improper withholdings from the lump sum payment to recoup the withholdings amount. For the reasons described herein, granting the appellant's petition for enforcement does not entitle the appellant to more than what is provided for by the terms of the settlement agreement. Lastly, the agency's unsubstantiated claim that the appellant may owe funds to her attorney is irrelevant to these conclusions. *Id.* at 11, 13.

¶20    Because we have found the agency in noncompliance, the agency is being directed to file evidence of compliance with the Clerk of the Board and the appellant will be afforded the opportunity to respond to that evidence. The appellant's petition for enforcement will be referred to the MSPB's Office of General Counsel, and, depending on the nature of the submissions, an attorney with the Office of General Counsel may contact the parties to further discuss the compliance process. The parties are required to cooperate with that individual in good faith. Because the purpose of the proceeding is to obtain compliance, when appropriate, an Office of General Counsel attorney or paralegal may engage in ex parte communications to, among other things, better understand the evidence of compliance and/or any objections to that evidence. Thereafter, the Board will issue a final decision fully addressing the appellant's petition for review of the

compliance initial decision[4] and setting forth the appellant's further appeal rights and the right to attorney fees, if applicable.

## ORDER

¶21      We ORDER the agency to submit to the Clerk of the Board within 45 days of the date of this decision satisfactory evidence of compliance with this decision. This evidence shall adhere to the requirements set forth in 5 C.F.R. § 1201.183(a)(6)(i), including submission of evidence and a narrative statement of compliance.  The agency's submission must include proof that it properly paid the appellant by check the amount of $10,187.88.[5]  We ORDER the appellant to cooperate in good faith in the agency's efforts to make this payment and to provide all necessary information the agency requests to help it carry out the Board's Order.  The agency must serve all parties with copies of its submission.

¶22      **The Board will assign a new docket number to this matter, DC-0752-16-0369-X-1.**  All subsequent filings should refer to the new docket number set forth above and should be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C.  20419

Submissions may also be made by electronic filing at the MSPB's e-Appeal site (https://e-appeal.mspb.gov) in accordance with the Board's regulation at 5 C.F.R. § 1201.14.

---

[4] The subsequent decision may incorporate the analysis and findings set forth in this order.

[5] Because the addendum to the settlement agreement is invalid as outlined herein, the payment is to be made to the appellant as set forth in the settlement agreement.  IAF, Tab 25 at 5.  The Board makes no representation as to the tax consequences of this payment, or to the tax consequences if the agency recoups from taxation authorities the withholdings amount from the portion of the lump sum payment already made.  The appellant may wish to seek the guidance of a tax professional on these matters.

¶23    The appellant may respond to the agency's evidence of compliance within 20 days of the date of service of the agency's submission. 5 C.F.R. § 1201.183(a)(8). If the appellant does not respond to the agency's evidence of compliance, the Board may assume that he is satisfied with the agency's actions and dismiss the petition for enforcement.

¶24    The agency is reminded that, if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the General Counsel of the Merit Systems Protection Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case. 5 C.F.R. § 1201.183(c). The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with." 5 U.S.C. § 1204(e)(2)(A).

¶25    This Order does not constitute a final order and is therefore not subject to judicial review under 5 U.S.C. 7703(a)(1). Upon final resolution of the remaining issues in this petition for enforcement by the Board, a final order shall be issued which shall be subject to judicial review.


FOR THE BOARD:                        /s/ for
                                      _____
                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.